UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANTONIO LEE MIXON,<br><br>　　　　　　　　　Petitioner,<br>v.<br><br>BRIAN E. WILLIAMS, *et al.*,<br><br>　　　　　　　　　Respondents. | Case No. 2:17-cv-02292-RFB-NJK<br><br>**ORDER** |

This action is a petition for a writ of habeas corpus brought by Antonio Lee Mixon, a prisoner incarcerated by the Nevada Department of Corrections. The petition (ECF No. 44) is before the Court for a resolution on the merits.

For reasons that follow, the petition is denied.

**I.　BACKGROUND**[1]

In September 2011, the State of Nevada filed a criminal complaint in Clark County, Nevada, charging Mixon with murder with use of a deadly weapon. Steven Skenadore, a police officer with the Las Vegas Metropolitan Police Department ("LVMPD"), testified at Mixon's preliminary hearing that the following events occurred when he responded to a call at an apartment complex about a fight and gunfire. Upon arriving, Officer Skenadore found a man lying on the ground with an apparent bullet wound in the back. When Officer Skenadore asked the man who shot him, the man responded, "Antonio." Clifford Mogg, a detective with the LVMPD testified

---

[1] The information in this section is taken from the state court record filed at ECF Nos. 23 and 24 and the Court's docket. For ease of reading, citations to the record are omitted in this section. In addition, the Court makes no credibility findings or other factual findings in this part. It provides background information for the Court's consideration of the issues.

that, when he was at the apartment complex interviewing possible witnesses the following day, Mixon came up to him and said, "I'm the guy you're looking for."

In September 2012, Mixon entered a negotiated plea of guilty to voluntary manslaughter with the use of a deadly weapon. After a sentencing hearing, the state district court entered a judgment of conviction imposing consecutive ten-year sentences with parole eligibility on each after four years. Mixon did not appeal his judgment of conviction.

Mixon initiated state post-conviction proceedings in December 2013, and thereafter filed numerous pleadings in state court, including a counseled supplemental petition. The state district court held an evidentiary hearing and subsequently denied relief. Mixon appealed.

Through counsel, Mixon filed an opening brief, but the Nevada Supreme Court subsequently granted Mixon's motion to dismiss counsel and proceed pro se. The court directed Mixon to file his own brief and indicate whether it was intended to supplement or replace the brief filed by counsel. Mixon filed an informal brief indicating that he wanted his brief to replace, rather than supplement, the counseled brief.

The Nevada Supreme Court then referred the matter to the Nevada Court of Appeals for disposition. In August 2017, the Nevada Court of Appeals entered an order affirming the district court's denial of relief. That same month, Mixon initiated this federal habeas proceeding.

After Mixon filed an amended petition in January 2019, Respondents filed a motion to dismiss with respect to three grounds for relief – Grounds Three, Four, and Five. In ruling on the motion, this Court dismissed Grounds Three and Four, and concluded Ground Five was unexhausted. The Court subsequently granted Mixon's motion for stay and abeyance to allow him to return to state court to exhaust Ground Five.

Mixon then filed a petition for post-conviction relief in the state district court that was denied on procedural grounds. His subsequent appeal was dismissed by the Nevada Supreme Court. After this case was reopened, the Court granted Respondents' motion to dismiss Ground Five as procedurally defaulted. Ground One and Ground Two of Mixon's Amended Petition are before the Court for a decision on the merits.

## II. STANDARD OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). The AEDPA provides the following standard of review:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.

86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004); see also Miller-El, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

If the state court's adjudication on the merits of a claim is not entitled to deference under § 2254(d), the federal court conducts a de novo review of the claim. Kernan v. Hinjosa, 578 U.S. 412, 413 (2016). Similarly, the federal court reviews a claim de novo if the state courts never reached the merits of the claim. Pirtle v. Morgan, 313 F.3d 1160, 1167–68 (9th Cir. 2002). Because de novo is more favorable to the petitioner, federal courts can deny writs of habeas corpus brought under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. Berghuis v. Thompkins, 560 U.S. 370, 390 (2010).

**III.   DISCUSSION**

    **a.  Ground One**

In Ground One, Mixon claims he was deprived of his right to effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments. He alleges that his counsel was ineffective because she failed to thoroughly investigate and evaluate the evidence against him. According to Mixon, counsel failed to assess the exculpatory value of a security video from the apartment complex that showed Officer Skenadore's encounter with the victim. He further alleges that he has reason to believe that the video would refute the officer's testimony that the victim told

the officer that "Antonio" was the person who shot him. He contends that, but for counsel's deficient performance, he would have insisted on going to trial rather than enter into plea negotiations.

To establish a claim of ineffective assistance of counsel ("IAC"), a petitioner must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the first Strickland prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. Id. at 687-88. Under the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. If the conviction was the result of a guilty plea, a petitioner shows prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The Nevada Court of Appeals in Mixon's post-conviction proceeding addressed, citing to the Strickland/Hill standard, the IAC claim he now raises in Ground One as follows:

> Mixon claimed counsel was ineffective for failing to provide him with discovery. Specifically, Mixon claimed counsel failed to provide him with a copy of surveillance video which he claims shows the victim did not say anything to the officers when they arrived, Mixon claimed had he seen this video, he would not have pleaded guilty and would have instead proceeded to trial.
>
> Mixon failed to demonstrate, had counsel shown him the video, he would not have pleaded guilty. Contrary to Mixon's claim that the video shows the officer not stopping and checking on the victim, the video shows the officer stop and lean over as though to hear something being said by the victim. Therefore, the district court did not err in denying this claim.

A review of the state court record shows that this decision is entitled to deference under § 2254(d). At the evidentiary hearing on Mixon's state post-conviction petition, the deputy district attorney described the content of the security video and noted that, although there was no audio, it

showed the police officer speaking with the victim while he was on the ground. Mixon's post-conviction counsel agreed that it did appear as if the officer spoke with the victim.

Mixon's trial counsel, Karen Connolly, testified at the hearing that she did not have an independent recollection of reviewing the video, but that notes in her file indicated that she was aware of it.[2] She further testified that she would not have a client enter a plea or make a recommendation until she had reviewed everything and that she would have brought the video to Mixon's attention if it contained anything that was exculpatory or inconsistent with the evidence presented at the preliminary hearing. At the conclusion of the hearing, the judge noted, after watching the video in chambers, that the video was very grainy but that it did show the officer bending over the victim for a few seconds. He further noted that the video did not show any exculpatory evidence whatsoever.

In sum, Mixon has not presented any credible evidence to support a finding that anything contained in the video would have been favorable to his defense or would have affected his decision to enter a guilty plea. See Hill, 474 U.S. at 59 (discussing the prejudice inquiry when a defendant who entered a guilty plea alleges counsel failed "to investigate or discover potentially exculpatory evidence"). Accordingly, he has not established that the state court's adjudication of the claim in Ground One resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or in a decision that was based on an unreasonable determination of the facts. Therefore, Ground One is denied.

///

///

### b. Ground Two

In Ground Two, Mixon claims that his Fifth Amendment right to due process was violated because his guilty plea was not knowingly, intelligently, and voluntarily entered. He alleges that his guilty plea is invalid because he entered it without knowing about or seeing the security video.

---

[2] The evidentiary hearing took place approximately four years after Connolly's plea negotiations on behalf of Mixon.

6

Because it involves the waiver of several constitutional guarantees, a guilty plea must not only be "voluntary" but also a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). A defendant's misguided assessment, however, of "every relevant factor entering into his decision" does not mean that his guilty plea will "be vulnerable to attack" after he enters it. Brady, 397 U.S. at 757. For example, a plea is not invalid merely because the defendant "discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case . . . ." Id.

It does not appear as if the claim Mixon advances in Ground Two was adjudicated on the merits by the state court. Even so, the claim fails under de novo review. As noted, Mixon has not demonstrated that the security video would have aided his defense. Even if it did, the fact that he did not know about the video is not grounds to set aside his guilty plea absent a showing of misconduct by state agents, see id., or ineffective assistance of counsel, see Tollett v. Henderson, 411 U.S. 258, 267 (1973)). Because he has not shown either, Mixon is not entitled to habeas relief based on Ground Two either.

## IV.  CONCLUSION

For the reasons set forth above, the Court will deny Mixon's petition for habeas relief.

Certificate of Appealability

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Accordingly, the Court has sua sponte evaluated the claims within the petition for suitability for the issuance of a COA. See 28 U.S.C. § 2253(c); Turner v. Calderon, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may only issue when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473,

484 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. Id.

After reviewing its determinations and rulings adjudicating Mixon's Amended Petition, the Court declines to issue a COA for its resolution of any procedural issues or any of Mixon's habeas claims.

**IT IS THEREFORE ORDERED** that Mixon's Amended Petition for a writ of habeas corpus (ECF No. 44) is **DENIED**. The Clerk shall enter judgment accordingly and close this case.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Mixon's motion for status check (ECF No. 75) is **DENIED** as moot.

DATED: September 25, 2023

RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE